## IN THE SUPERIOR COURT OF GUAM

FILED
COURT

2013 OCT 28 PM 2: 44

CLERK OF COURT

BY:_____

|  |  |
|---|---|
| TIMOTHY C.S.A. LUJAN, | ) DOMESTIC CASE NO. DM0605-02 |
| Plaintiff, | ) |
| vs. | ) FINDINGS OF FACT AND |
| | ) CONCLUSIONS OF LAW |
| RITA M.S. LUJAN, | ) |
| Defendant. | ) |

## INTRODUCTION

This matter came before the Honorable Maria T. Cenzon following remand from the Supreme Court of Guam on March 4, 2013 (hereinafter referred to sometimes as the "Remand Hearing"). *See Timothy C.S.A. Lujan v. Rita M.S. Lujan*, 2012 Guam 7. Timothy C.S.A. Lujan (hereinafter "Plaintiff") was represented by Attorney Thomas L. Roberts. Rita M.S. Lujan (hereinafter "Defendant") was represented by Attorney Ronald P. Moroni. Having considered the parties' testimony, the evidence presented, and the record in this case, the Court hereby makes the following findings of fact and conclusions of law:[1]

## FINDINGS OF FACT

1. The parties were married in Guam on February 21, 1981.

2. Plaintiff filed a Complaint for Divorce on October 2, 2002 on the grounds of irreconcilable differences. Defendant answered and counterclaimed on January 13, 2013, alleging extreme mental cruelty and adultery.

3. Plaintiff's Amended Answer to Defendant's Counterclaim on January 31, 2013 and statements at the Remand Hearing of March 4, 2013 admit to Defendant's allegation of

---

[1] To the extent a finding of fact can be considered a conclusion of law, or a conclusion of law considered a finding of fact, it will be treated as such.

Page 1 of 7

adultery.

4. The parties were granted an Interlocutory Decree of Divorce on the grounds of irreconcilable differences by the Honorable Elizabeth Barrett-Anderson (hereinafter "Judge Barrett-Anderson") on October 30, 2003.

5. Said Interlocutory Decree of Divorce incorporated a Divorce and Settlement Agreement (hereinafter "Agreement") executed by the parties on September 4, 2013.

6. Plaintiff was represented by Attorney Thomas L. Roberts and Defendant was represented by Carol Ann Telford Butler in the divorce action.

7. The parties, without their attorneys present, attended two mediation sessions at Inafa' Maolek Conciliation on April 29 and 30, 2003, where they produced the first draft of their Divorce and Settlement Agreement. *See* Mediation Report (Oct. 10, 2003).

8. The final Agreement was reviewed by both parties and their attorneys.

9. Plaintiff filed a Motion to Modify Divorce Decree on May 13, 2010. Judge Barrett-Anderson denied the Motion to Modify Divorce Decree on September 22, 2010. Judge Barrett-Anderson found that, as a matter of law, the provisions which Plaintiff wished to modify were a settlement of property rights which the court would not disturb, in contrast to a judicially modifiable alimony provision. *See* Decision: Motion to Modify Decree (Sept. 22, 2010).

10. Plaintiff filed an appeal of this Decision with the Supreme Court of Guam on October 21, 2010.

11. The Supreme Court of Guam issued an opinion on June 15, 2012 in *Timothy C.S.A. Lujan v. Rita M.S. Lujan*, 2012 Guam 7. The Supreme Court found that it could not ascertain the parties' intent from the language of the Divorce and Settlement Agreement

and remanded the case to this Court to consider extrinsic evidence of the parties' intent.

12. On remand, this Court held a hearing to consider evidence of the parties' intent on March 4, 2013.

## CONCLUSIONS OF LAW

The issue before the Court is whether Plaintiff's assumption of the two mortgages listed in section V of the Agreement (entitled "Tim's Separate Debt"), in conjunction with the grant of an effective life estate to Defendant, was intended to be a division of property or a form of spousal support. If this Court finds that the mortgage assumption provision was intended as a form of spousal support to Rita, then, as a matter of law, the provision was not integrated with the provisions determining the division of property and may be judicially modified. *Lujan v. Lujan*, 2012 Guam 7 ¶¶ 45-46.

"A divorce decree incorporating a settlement agreement is simply a consent decree." *Id.* at ¶ 17 (quoting *Blas v Cruz*, 2009 Guam 12 ¶ 18 and *Leon Guerrero v. Moylan*, 2000 Guam 28 ¶ 8). Such an agreement, as it relates to property, may not disturbed by this Court "in the absence of fraud or gross inequity." *Id.* at ¶ 22 (quoting *Leon Guerrero* at ¶ 9). No claims of or evidence of fraud or gross inequity were presented to this Court in either the record or at hearing. In contrast, 19 GCA § 8405 permits a court to modify those provisions of the agreement which are intended to be "suitable allowance to the other spouse for that person's support, during that person's life or for a shorter period, as the Court may deem just, having regard to the circumstances of the parties, respectively; and the Court may, from time to time, modify its order in these respects." 19 GCA § 8405 (2005).

An examination of the record in the underlying case, the four corners of the Agreement itself, and the extrinsic evidence presented at the Remand Hearing do not reveal any persuasive

basis for treating the provision relating to Defendant's assumption of the mortgage as a form of spousal support which this Court has the power to modify.

The Agreement is divided into six sections (Statistical Facts, Separation of the Parties, Child Custody and Child Support, Division of Community Property and Separate Property, Tim's Separate Debt, and Miscellaneous). Clauses "a" and "b" of Tim's Separate Debt constitute the mortgages of the parties' marital residence. Clause "3" of Miscellaneous states the parties' understanding that title to their home shall pass equally to their two children and Defendant "shall effectively have all of the benefits ordinarily enjoyed under a life estate in the home, although no deed therefor shall pass from Tim to Rita." The net effect of these two provisions form the crux of Plaintiff's claimed spousal support to Defendant.

Nothing in the structure, placement, or language of these clauses indicate that Plaintiff's assumption of the mortgages with the grant of an effective life estate to Defendant constituted an intent to form an obligation of continuing spousal support. Notably, there is no language to indicate temporal or conditions subsequent limitations on this arrangement.[2] At the remand hearing, the only extrinsic evidence presented of intent to create a spousal support obligation was Plaintiff's own testimony regarding his state of mind and intentions. This statement of subjective intent did not correspond with the Defendant's statements of subjective intent and was not corroborated by additional documentary evidence that was introduced (*see* Exhibit "4" where Defendant's attorney states "Rita will waive her claims to alimony" and Exhibit "5" where Plaintiff's attorney states "Tim will not agree to alimony"). The extrinsic, documentary evidence introduced at the remand hearing indicates that on the issue of alimony, the parties

---

[2] *See Lujan* at ¶ 35 and Chief Justice Carbullido's Dissent at ¶ 56 for examples of some standard provisions limiting or terminating an obligation for spousal support, none of which are found within the Divorce and Settlement Agreement.

had a perfect meeting of the minds to *not* create a spousal support obligation—subjective intentions which were manifested in the omission of language customary of spousal support in the final Agreement. This Court finds that "the mutual intention of the parties as it existed at the time of entering into the settlement agreement" (*Lujan* at ¶ 30, *citing Leon Guerrero* at ¶ 8 (*citing* 18 GCA § 87102 (1992))), was not to create any type of spousal support obligation.

Plaintiff testified at the Remand Hearing that prior to mediation, he understood Guam law provided for an even split of community property. Nevertheless, the draft originating from mediation and the final Agreement submitted to this Court, after review by both parties and their attorneys, provided that Plaintiff would assume all the community debts, gave Defendant nearly all the household goods, and provided Defendant with a life estate in the marital property. The Supreme Court of Guam hypothesized that "Tim could have agreed to assume the mortgage in exchange for Rita's agreement to abstain from pursuing an at-fault divorce action, which might have potentially resulted in Rita receiving a greater share of the community property." [3] *Lujan* at ¶ 36. The record in this case reflects that, while Plaintiff sought a no-fault divorce, Defendant counterclaimed with grounds for an at-fault divorce. Plaintiff admitted to the counterclaim of adultery, both in his Amended Answer and at the Remand Hearing. Despite this admission, parties eventually sought a no-fault divorce. Although there was no evidence presented at the Remand Hearing that Defendant waived her right to an at-fault divorce for the life estate in the marital home and there is no explicit statement to that effect in the Agreement, the record reflects that Defendant did *in fact* waive

---

[3] "If [a divorce] decree be rendered on the ground of adultery or extreme cruelty, the community property shall be assigned to respective parties in such proportions as the court, from all the facts in the case, and the condition of the parties, may deem just." 19 GCA § 8411(a) (2005). If [a divorce] decree be rendered on any other ground than that of adultery or extreme cruelty, the community property shall be equally divided between the parties." 19 GCA § 8411(b) (2005).

her right to an at-fault divorce. Furthermore, Defendant waived an actual financial interest in ½ of the marital home in lieu of an undeeded life estate. This Court notes that such actual waivers of Defendant's rights occurred once the Agreement was executed, regardless if they were specifically identified as consideration therein.

Finally, Exhibit "5" reflects that both Plaintiff and his attorney engaged in detailed calculations of his financial needs prior to entering into the Agreement. Specifically, Plaintiff and his attorney determined he would need at least $2,000/month to live on and worked backwards from that number to determine the obligations he would be able to undertake. The analysis was detailed enough to include a request for the television in the master bedroom instead of another television. *See* Exhibit "5" at 4 (Letter from Attorney Roberts to Attorney Telford Butler dated Dec. 20, 2002)("But, Tim wants the television in the master bedroom rather than the 20 year-old television set Rita is offering."). Once executed, the Agreement remained uncontested for nearly seven years and the only circumstance which appears to have changed and not addressed in the Agreement (*cf.* the Agreement's provisions dealing with the graduated modifications and eventual cessation of child support) was Plaintiff's subsequent marriage in 2008. This change in the Plaintiff's marital status is insufficient grounds to modify a duly executed marital property settlement agreement which occupies "a favored position in the law." *Adams v. Adams*, 177 P.2d 265 (Cal. 1947). Because the agreement relating to Plaintiff's assumption of the mortgage debt is not modifiable spousal support under 19 GCA § 8405, the Court finds, as a matter of law, that it is not a hybrid agreement as recognized in *Adams* and by the Supreme Court of Guam. *See Lujan* at ¶ 40.

//

//

## CONCLUSION

Based on the foregoing, the Court DENIES the Plaintiff's Motion to Modify Divorce Decree on the basis of the additional evidence presented during the Remand Hearing and its review of the record in light of the Supreme Court of Guam's Opinion.

**SO ORDERED this 28th day of October, 2013.**

**HONORABLE MARIA T. CENZON**
**Judge, Superior Court of Guam**